DICKINSON WRIGHT PLLC
Steven A. Caloiaro
Nevada Bar No. 12344
100 West Liberty Street
Suite 940
Reno, NV 89501
Tel: (775) 343-7500
Fax: (844) 670-6009
Email: scaloiaro@dickinsonwright.com

*Attorney for Plaintiff SATA GmbH & Co. KG*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SATA GmbH & Co. KG, a German corporation,<br><br>Plaintiff,<br><br>v.<br><br>USA ITALCO INTERNATIONAL LIMITED, a New York Company; Zhejiang Auarita Pneumatic Tools L.L.C. d.b.a. Auarita, a foreign entity<br><br>Defendants. | Case No.: 3:18-cv-00351-MMD-WGC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND ATTORNEY FEES** |

Plaintiff SATA GmbH & Co. KG ("SATA") moves for default judgment, permanent injunction, and attorney's fees against Defendants USA ITALCO INTERNATIONAL LIMITED, a New York Company ("ITALCO"); and Zhejiang Auarita Pneumatic Tools L.L.C. d.b.a. Auarita, ("AUARITA") a foreign entity, (collectively "Defendants") in this action for trademark counterfeiting, trademark infringement, unfair competition, and patent infringement. (ECF No. 21) Having weighed the factors outlined by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), the Court grants SATA's motion for default judgment, awards statutory damages, issues a permanent injunction, and awards attorney's fees.

**<u>FINDINGS OF FACT</u>**

SATA is a century-old German Corporation that manufactures paint spray guns and related equipment worldwide. (ECF No. 21 at 3.) SATA's United States-directed business produces over $15 million annually with more than 100,000 paint spray guns and reservoirs sold. (*Id*. at 4.) SATA

owns ten (10) trademark registrations that it claims Defendants infringed: (1) a design mark for a green band of color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,770,801); (2) a design mark for a band of any color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,793,583); (3) a design mark for a band of red color extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 3,072,417); (4) a design mark for a band of blue color extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 2,774,593); (5) a design mark for a green grip base plate (Registration No. 3,153,260); (6) "1000" (Registration No. 4,920,510); (7) "2000" (Registration No. 4,920,511); (8) "3000" (Registration No. 4,920,512); (9) "4000" (Registration No. 4,666,773); and (10) "5000" (Registration No. 4,731,525) (collectively "SATA Marks") (*Id.* at 4-5.) SATA uses the SATA Marks to advertise and promote its products throughout the United States and the world. (*Id.* at 4.)

SATA also has eight (8) design patents that it claims Defendants infringed: (1) an ornamental design for a spray gun head ring (Patent No. U.S. D459,432); and (2) an ornamental design for a paint spray gun head ring (Patent No. U.S. D459,433); (3) an ornamental design for a spray gun head ring (Patent No. U.S. D770,593); (4) an ornamental design for a spray gun (Patent No. U.S. D548,816); (5) an ornamental design for a paint spray gun rear portion (Patent No. U.S. D758,537); (6) an ornamental design for a spray gun (Patent No. U.S. D644,716); (7) an ornamental design for an identification tag (Patent No. U.S. D655,347); and (8) an ornamental design for a paint spray gun (Patent No. U.S. D552,715) (collectively "SATA Patents") (*Id.* at 5-6.)

In or around July of 2017, SATA discovered that an influx of counterfeit SATA guns were being distributed on the west coast branded under the name ITALCO ("Counterfeit Paint Spray Guns"). (*Id.* at 6). Upon investigation, SATA uncovered two distributors, one based in Phoenix, Arizona, and one based in Sacramento, California. (*Id.*) These distributors were distributing, advertising, offering for sale, and selling several ITALCO paint spray gun models. *Id*. On Friday, June 30, 2017, SATA's investigator purchased an ITALCO 5000 for $350. *Id*. The ITALCO model infringes on approximately seven (7) SATA Marks and SATA Patents. *Id*. On August 25, 2017, SATA's investigator was able to purchase an ITALCO H-4000 Sprayer and ITALCO H-5000

sprayer for a combined amount of $756. *Id*. Those two models infringe a number of SATA's intellectual property.

On October 31, 2017, SATA representatives attended the SEMA trade show in Las Vegas, Nevada, and became aware of Defendants' presence because several vendors and consumers were talking about a knock-off SATA gun that was half the cost that had recently become available. (*Id*. at 7.) SATA then became aware that a local Las Vegas auto paint company was selling Defendants' Counterfeit Paint Spray Guns. (*Id*.) On Tuesday, November 1, 2017, SATA representatives visited the auto paint company's store and, when they inquired about the availability of the Counterfeit Paint Spray Guns, they were informed that the store had recently sold two pallets, but they could receive a new shipment by request within two weeks. (*Id*.) The store employees referred to the Counterfeit Paint Spray Guns as "knock off SATAs." (*Id*.). The store also provided a representative sample of an ITALCO H-5000. (*Id*.) On December 21, 2017, SATA filed an action against the store for the Counterfeit Paint Spray Guns. *See* Case No. 2:17-cv-03101. The case against the store was subsequently settled.

During the litigation, SATA learned that Defendants were actively soliciting customers in the United States. (ECF No. 1, Exs. D, E.) An individual named Betty, who listed herself as a "Sales Manager," sent several versions of the paint spray guns on behalf of the parent company AUARITA. (*Id*.) The Las Vegas auto paint company later purchased Counterfeit Paint Spray Guns directly from AUARITA, and received the shipment in Las Vegas, Nevada. (*Id*.)

SATA also discovered that Defendants operate websites containing advertisements for the Counterfeit Spray Guns. (ECF No. 21 at 7.) The websites also include the Counterfeit Paint Spray Guns. (*Id*.) SATA then filed this suit, asserting trademark counterfeiting, trademark infringement, unfair competition, and patent infringement. (ECF No. 1.)

On August 28, 2018, ITALCO was served with a copy of the Complaint by personal service. (ECF No. 11.) ITALCO failed to answer or otherwise respond to SATA's Complaint. *See generally*, Docket. Accordingly, on September 25, 2018, SATA filed a request for entry of default. (ECF No. 13.) The Clerk of the Court entered Default against ITALCO on September 26, 2018. (ECF No. 14.)

On September 17, 2018, this Court entered its notice regarding Intention to Dismiss Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (ECF No. 10.) In response, SATA filed a Motion for Leave to Obtain Service of Process through Alternative Means or, in the Alternative, Motion to Extend Time for Service. (ECF No. 12) In its Motion, SATA moved this Court under Fed. R. Civ. P. 4 to allow SATA to serve the Complaint and Summons on AUARITA via electronic mail. A hearing on SATA's motion was held on October 23, 2018. On October 24, 2018, this Court entered its order granting SATA's motion and allowing SATA to serve AUARITA via email "because: email service is not prohibited by international agreement with China; service under the [Hague Convention] would be expensive and result in an unnecessary delay under these circumstances; service by email is reasonably calculated to apprise Auarita of the action and afford Auarita an opportunity to present its objections, especially given that SATA has been in communication with Auarita via email and they are already aware of the lawsuit." (ECF No. 16.)

On October 26, 2018, AUARITA was served with a copy of the Complaint via email. (ECF No. 18.) AUARITA failed to answer or otherwise respond to SATA's Complaint. *See generally*, Docket. SATA thereafter filed a request for entry of default on November 29, 2018. (ECF No. 19.) The Clerk of the Court entered Default against AUARITA on November 30, 2018. (ECF No. 20.)

## **CONCLUSIONS OF LAW**

### A. **Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment after the clerk enters default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The court may require a plaintiff to provide additional proof

of facts or damages in order to ensure that the requested relief is appropriate. *See* Fed. R. Civ. P. 55(b)(2). Whether to grant a motion for default judgment lies within the district court's discretion, *Eitel*, 782 F.2d at 1471, which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

**B. Analyzing the *Eitel* Factors**

**1. Possibility of prejudice to plaintiffs**

SATA sued Defendants to stop them from infringing SATA's distinctive design and marks. SATA served Defendants with adequate process and served Defendants with SATA's request for entry of clerk's default and clerk's default. Defendants ignored it. SATA would be prejudiced by requiring SATA to expend additional resources litigating an action that appears to be uncontested. And SATA has no other recourse to prevent Defendants' further infringement of its trademarks and patents. This factor thus weighs in favor of default judgment.

**2. Substantive merits and sufficiency of the claims**

The second and third *Eitel* factors require SATA to demonstrate that it has stated a claim on which it may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). SATA sufficiently alleges its trademark infringement, unfair competition, trademark counterfeiting, and design patent infringement claims.

To establish trademark-infringement and unfair-competition claims, SATA must show that: (1) it is the owner of a valid, protectable mark, and (2) Defendants are using a confusingly similar mark that is likely to cause deception concerning the origin of the goods. 15 U.S.C. § 1114 (2012); 15 U.S.C. § 1116 (2012); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *see also New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (explaining that the elements for trademark infringement and unfair competition are

essentially the same). SATA has federal trademark registrations for: (1) a design mark for a green band of color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,770,801); (2) a design mark for a band of any color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,793,583); (3) a design mark for a band of red color extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 3,072,417); (4) a design mark for a band of blue color extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 2,774,593); (5) a design mark for a green grip base plate (Registration No. 3,153,260); (6) "1000" (Registration No. 4,920,510); (7) "2000" (Registration No. 4,920,511); (8) "3000" (Registration No. 4,920,512); (9) "4000" (Registration No. 4,666,773); and (10) "5000" (Registration No. 4,731,525). SATA has provided screenshots of Defendants' websites showing products with confusingly similar marks during the same time period that SATA was selling its own products. SATA alleges that the concurrent advertising of confusingly similar products is likely to cause deception regarding the origin of the goods. (ECF No. 21 at 12-13.)

For its trademark-counterfeiting claim, SATA must show that: (1) it is the owner of a valid, protectable mark; and (2) Defendants intentionally used the mark in commerce, knowing that it was counterfeit. 15 U.S.C. § 1114(1)(a) (2012). A mark is counterfeit if "[i]t is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i) (2012). If the mark is intentionally and knowingly distributed, a defendant is susceptible to heightened liability. 15 U.S.C. § 1117 (b)(1) (2012); *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). SATA has valid trademarks for the SATA Marks, and Defendants advertise identical, counterfeit versions of those marks for sale. (ECF No. 21 at 7-8). SATA argues that Defendants have intentionally counterfeited its marks because: (1) SATA has been a leader in the paint spray gun industry for over a century, so Defendants would have known of its brand and trademarked design; (2) Defendants place the exact marks in the exact same place as the SATA Marks; and (3) Defendants are using their counterfeit marks on paint spray guns, the exact type of

good covered by SATA's Marks. (ECF No. 21 at 11-12). The Court therefore finds that SATA has sufficiently pled that Defendants intentionally and knowingly engaged in unlawful trademark counterfeiting.

Finally, design-patent infringement is governed by the "ordinary observer" test. *Gorham Mfg. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). Infringement of a design patent occurs if "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess*, 543 F.3d at 672; *see also Gorham*, 81 U.S. at 528. Complete similarity is not required. *Gorham*, 81 U.S. at 527–28 (discussing that an infringing product may be dissimilar to experts as long as it is similar to the ordinary observer). Defendants' products have the same general visual appearance as SATA's, such that it is likely that a purchaser would confuse Defendants' product with SATA's patented designs. So, the Court finds that SATA has sufficiently pled all of its claims, and the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3. Amount at stake

The fourth *Eitel* factor requires the Court to consider "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). SATA seeks Ten Million Dollars ($10,000,000) in statutory damages under the Lanham Act. (ECF No. 21 at 30.) The Lanham Act awards no less than $1,000 and no more than $200,000 in statutory damages "per type of goods or services sold, offered for sale, or distributed," 15 U.S.C. § 1117(c)(1) (2012), and willful infringements increase the statutory-damages ceiling to $2,000,000. 15 U.S.C. § 1117(c)(2) (2012). District courts have "wide discretion" to grant statutory damages within those boundaries. *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (stating that courts have wide discretion in awarding statutory damages under an analogous provision of the Copyright Act).

As this Court has recognized, "[s]tatutory damages for trademark counterfeiting are particularly appropriate in default cases,… where there is a lack of information about a defendant's

sales and profits." *Avnet, Inc. v. Avana Techs. Inc.*, 2014 U.S. Dist. LEXIS 177436, *18 (D. Nev. Dec. 3, 2014) (external citations omitted); *see also Hand & Nail Harmony, Inc. v. Guangzhou Shun Yan Cosmetics Co.*, 2015 WL 4378197, at *6 (D. Nev. July 15, 2015). A statutory damages award should "not merely compel[ ] restitution of profit and reparation for injury but also discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952). The purpose of § 1117 is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters. *See* S.Rep. No. 177, 104th Cong. (1995).

Here, Defendants intentionally used the SATA Marks in commerce and knew that the marks were counterfeit. When seeking the enhanced award for willful counterfeiting, "an allegation of willful trademark infringement is deemed true on default." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 698 (9th Cir. 2008). As alleged in the Complaint, Defendants advertised and offered for sale products containing the infringing marks. (ECF No. 1.) Further, as alleged in the Complaint, Defendants knew that the infringing marks were counterfeit of the SATA Marks. *Id*.

Additional factors weigh in favor of awarding Ten Million Dollars ($10,000,000) in statutory damages. Defendants' failure to appear in this action has hindered SATA's ability to discover Defendants' financial situation or status. Defendants also have continued to advertise the Counterfeit Paint Spray Guns on their websites. (ECF No. 21-1 Caloiaro Decl., Exs. 1-7.) Finally, Defendants are a large corporation that conducts international business. (ECF No. 21 at 24.) They should have known better than to infringe upon SATA's federally protected rights. SATA also notes that the requested award is in line with this Court's other decisions. *See Penn Eng'g & Mfg. Corp. v. Dongguan Fenggang Pinconn Hardware Factory*, No. 217CV02679RJCPAL, 2018 WL 3014794, at *3 (D. Nev. June 15, 2018) (finding that "an award of the maximum statutory damages is appropriate" based on defendants' "refusal to participate in th[e] case and the egregious nature of the counterfeiting.")

In light of this information, the Court finds that statutory damages of Ten Million Dollars ($10,000,000) for this willful infringement are appropriate and this sum-at-stake factor weighs in favor of a default judgment.

### 4. Possibility of dispute

The next *Eitel* factor the Court considers is the possibility that material facts are disputed. SATA adequately alleged its trademark infringement, trademark counterfeiting, patent infringement, and unfair competition claims against Defendants. Defendants failed to respond or appear, so all of SATA's well-pled, material facts are admitted and presumed true. So this factor, too, weighs in favor of default judgment.

### 5. Possibility of excusable neglect

The sixth *Eitel* factor requires the Court to consider whether Defendants' default may have resulted from excusable neglect. There is no evidence that Defendants defaulted due to excusable neglect. The record reflects that, on August 28, 2018, ITALCO was served with a copy of the Complaint by personal service. (ECF No. 11.) Moreover, on October 26, 2018, AUARITA was served with a copy of the Complaint via email. (ECF No. 18.) Defendants failed to answer or otherwise respond to the Complaint. The Clerk of the Court entered Default against ITALCO on September 26, 2018. (ECF No. 14.) The Clerk of the Court entered Default against AUARITA on November 30, 2018. (ECF No. 20.) This action has been pending for more than one year, giving Defendants—who are still absent—ample time to appear in the litigation. This factor weighs in favor of default judgment.

### 6. Policy for deciding cases on the merits

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible." *Twentieth Century Fox v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (quoting *Eitel*, 782 F.2d at 1472). Defendants' failure to participate in this case renders a decision on the merits "impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177 (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)). Although this factor almost always weighs against default judgment, the other factors outweigh this policy and balance in favor of a default judgment.

### C. Permanent Injunctive Relief

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark infringement.

15 U.S.C § 1116 (2012); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enter., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

### 1. Irreparable injury and insufficiency of monetary damages

A permanent injunction is appropriate here because SATA has pled sufficient facts to support an inference of irreparable injury. The Ninth Circuit has recognized that, in trademark cases, irreparable harm may be shown through evidence of the loss of prospective customers, goodwill, or reputation. *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). SATA has suffered and will continue to suffer irreparable injury to its goodwill, and monetary damages are inadequate to compensate for SATA's injury. Additionally, despite failing to respond to the Complaint, Defendants continue to advertise the Counterfeit Paint Spray Guns, export goods and make sales within the United States.

Accordingly, the lost opportunities and diminished value of goodwill resulting from Defendants' continued infringement of SATA's Intellectual Property will cause irreparable harm. *Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp*, 2015 WL 6501228, at *3 (D. Nev. Oct. 26, 2015); *See also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

Here, SATA has alleged sufficient facts to demonstrate that SATA is a renowned paint

spray gun manufacturer that owns federal trademark registrations for its marks and has invested millions of dollars advertising and promoting its products. (ECF No. 1, ¶¶ 7-17.) Further, SATA has established that SATA and Defendants are competitors in the paint spray gun industry and that Defendants are using confusingly similar trademarks, and have continued their infringement. Finally, Defendant AUARITA is a Chinese company making the recovery of actual monetary damages unlikely. SATA has thus suffered irreparable harm to which there is no adequate remedy.

### 2. Balance of hardships

The hardships also balance in SATA's favor. When balancing hardships, the Court must consider the respective difficulties that SATA and Defendants would face with and without injunctive relief. *MGM Studios, Inc., v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C. D. Cal 2007). The Court finds no hardships that Defendants would endure besides being compelled to cease their unlawful conduct. But without an injunction, SATA will continue to be harmed because Defendants are likely to continue to infringe on SATA's marks and designs. Thus, this factor strongly favors injunctive relief.

### 3. Public interest

The primary purpose of the Lanham Act is to "[p]rotect consumers against deceptive designations of the origins of goods." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980). Given the similarity between SATA's Marks and Defendants' counterfeit marks, injunctive relief also serves the interest of the public by protecting consumers from unwittingly purchasing these counterfeit products.

In sum, SATA has shown that it is entitled to a permanent injunction that:

a. Enjoins Defendants—and their officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—from using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any unlawful reproduction, counterfeit, copy, or colorable

1    imitation of the SATA Marks on the websites accessible through the domain names
2    http://www.italcojet.com/ and http://www.auarita.com/ or any other website owned or
3    controlled by Defendants or that display Defendants' products (collectively, the "Enjoined
4    Websites"); or (iii) by displaying any reproduction, counterfeit, copy, or colorable imitation
5    of the SATA Marks at any trade show in the United States, including but not limited to, at
6    any future SEMA trade show; and

    b. Enjoins Defendants—and their officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—from manufacturing, using, selling, offering to sell, or importing into the United States, paint spray guns embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents D459,432; D459,433; D770,593; D548,816; D758,537; D644,716; D655,347; and D552,715, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future SEMA show;

    c. Defendants shall immediately and permanently take down any website, including but not limited to http://www.italcojet.com/ which was registered on November 13, 2012 with website registrar Alibaba Cloud Computing (Beijing) Co., Ltd. and http://www.auarita.com/ which was registered on November 18, 2005 with the website registrar XINNET TECHNOLOGY CORPORATION that contains any depiction, description, or advertisement of product that infringes the intellectual property owned by SATA and asserted in the present action.

### D. Attorney's fees

SATA also requests attorney's fees in the amount of Sixteen Thousand Three Hundred Forty-Three Dollars ($16,343.00). (ECF No. 21 at 30). The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases," 15 U.S.C. § 1117(a) (2012), and the Ninth Circuit has held that willful infringement cases like this one are "exceptional." *Gracie v.*

*Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)). Pursuant to Local Rule 54-14(b)(1), SATA has provided a reasonable itemization and description of the work performed to support an award of attorneys' fees, and the Court determines that the requested fees are reasonable.

To obtain an award of costs, "A prevailing party who claims costs must file and serve a bill of costs and disbursements on the form provided by the clerk no later than 14 days after the date of entry of the judgment or decree." LR 54–1(a). "A bill of costs and disbursements must be supported by an affidavit and distinctly set forth each item so that its nature can be readily understood. An itemization and, where available, documentation of requested costs in all categories must be attached to the bill of costs." LR 54–1(b). SATA will provide this court with the appropriate bill of costs within 14 days of entry of this judgment.

## **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that SATA's Motion for Default Judgment (ECF No. 21) is **GRANTED** and the Clerk of the Court is directed to **ENTER JUDGMENT** in favor of SATA and against Defendants on Plaintiff's Complaint, as follows:

    a. Statutory damages in the amount of Ten Million Dollars ($10,000,000);

    b. Attorney fees in the amount of Sixteen Thousand Three Hundred Forty-Three Dollars ($16,343)**;**

    c. Costs in the amount of the forthcoming Bill of Costs; and

    d. Post-judgment interest on the principal sum at the judgment rate from the date of entry of the Judgment until paid in full.

IT IS HEREBY FURTHER ORDERED that, Defendants, and their officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with any of them are hereby permanently enjoined and restrained from:

    a. Using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any unlawful

reproduction, counterfeit, copy, or colorable imitation of the SATA Marks on the websites accessible through the domain names http://www.italcojet.com/ and http://www.auarita.com/ or any other website owned or controlled by Defendnats or that display Defendants' products (collectively, the "Enjoined Websites"); or (iii) by displaying any unlawful reproduction, counterfeit, copy, or colorable imitation of the SATA Marks at any trade show in the United States, including but not limited to, at any future SEMA trade show; and

b. Manufacturing, using, selling, offering to sell, or importing into the United States, paint spray guns embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents D459,432; D459,433; D770,593; D548,816; D758,537; D644,716; D655,347; and D552,715, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future SEMA show.

IT IS HEREBY FURTHER ORDERED that,

c. Defendants shall immediately and permanently take down any website, including but not limited to http://www.italcojet.com/ which was registered on November 13, 2012 with website registrar Alibaba Cloud Computing (Beijing) Co., Ltd. and http://www.auarita.com/ which was registered on November 18, 2005 with the website registrar XINNET TECHNOLOGY CORPORATION that contains any unlawful depiction, description, or advertisement of product that infringes the intellectual property owned by SATA and asserted in the present action.

ENTERED THIS 20th day of September, 2019.

_____
UNITED STATES DISTRICT JUDGE

-14-